# United States District Court

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| SHELIA HERRIN | § | |
| | § | |
| V. | § | CASE NO. 4:11-CV-254 |
| | § | Judge Mazzant |
| JPMORGAN BANK, N.A., | § | |
| CHASE HOME FINANCE, LLC | § | |

## <u>ORDER</u>

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #26).  The

Court, having considered the relevant pleadings, finds that Defendant's Motion for Summary

Judgment should be granted.

## BACKGROUND

On or about July 21, 2006, Plaintiff executed an Adjustable Rate Note ("Note") payable to

WMC Mortgage Corporation in which she promised to repay $257,200, with interest.  To secure

payment of the Note, Plaintiff executed a Deed of Trust ("Deed of Trust") encumbering the property

located at 13360 Grayhawk Boulevard, Frisco, Texas 75034 (the "Property").  The Deed of Trust

requires Plaintiff to provide for payment of amounts due for "Escrow Items," including taxes.  The

Deed of Trust further provides:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's
> obligation to pay the Funds for any or all Escrow Items ... In the event of such waiver,
> Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items
> for which payment of Funds has been waived by Lender ... Borrower's obligation to make
> such payments and to provide receipts shall for all purposes be deemed to be a covenant and
> agreement contained in this Security instrument, as the phrase "covenant and agreement is
> used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a
> waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise
> its rights under Section 92 and pay such amount and Borrower shall then be obligated under
> Section 9 to repay to Lender any such amount.

Plaintiff signed an escrow waiver agreement, also dated July 21, 2006, which states in

relevant part:

> Borrower(s) agrees to be solely responsible for the timely payment of any and all real estate taxes, assessments, leasehold payments, ground rents and hazard or property insurance premiums ... affecting the above referenced property.
>
> ...
>
> In the event Borrower(s) fail to comply with any of the above conditions, Lender has the right and Borrower(s) agree to pay sufficient funds to establish a fully funded escrow account and to have the monthly payment adjusted to include a monthly escrow deposit.
>
> Lender also has the right to advance funds for the payment of real estate taxes or obtain hazard insurance ... that will become the additional obligation of Borrower(s) under the terms set forth in the security instrument.

Finally, Plaintiff also signed a Notice of No Oral Agreements, of even of even date, which states in relevant part:

> THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

The Note, Deed of Trust, Notice of No Oral Agreements, and Escrow Waiver Agreement are referred to herein as the "Loan Agreement."  It is undisputed that on or around October 2006, the servicing of the loan was transferred to Defendant JPMorgan Chase Bank, National Association, individually and as successor by merger to Chase Home Finance LLC ("Defendant" or "Chase").

Plaintiff failed to pay her 2007 property taxes in full. The Denton County Tax Assessor's office sent a Notice of Tax Due to Plaintiff on or about October 25, 2007, indicating that she owed $766.30 for 2007 property taxes.  In a letter dated April 9, 2008, Chase informed Plaintiff her 2007 property taxes were delinquent as of March 24, 2008.  The letter states, in relevant part:

> Your failure to pay any outstanding taxes within thirty (30) days from the date of this letter may result in Chase's establishing an escrow account on your behalf and a subsequent increase in your mortgage payment amount. The increased amount will include the delinquent tax payment and funds for the payment of all future real estate tax bills.

2

On March 27, 2008, the Denton County Tax Assessor's Office received a payment of $766.30 from Plaintiff for past-due 2007 property taxes owed on the Account, enclosed in a letter from Plaintiff requesting waiver of the assessed penalty of $68.00.  In a letter addressed to Plaintiff and dated March 27, 2008, the Denton County Tax Assessor denied Plaintiff's request that the penalty be waived.  On May 12, 2008, the Denton County Tax Assessor's Office received a payment of $68.97 from Plaintiff for past-due 2007 property taxes.   On May 15, 2008, the Denton County Tax Assessor's Office sent a Notice of Delinquent Tax to Plaintiff indicating that she owed $2.52 for the remaining 2007 property taxes.  Plaintiff did not pay the remaining 2007 property taxes.  On or about June 19, 2008, Chase paid the remaining delinquent 2007 property taxes in the amount of $2.56.  Chase's payment was received by Denton County on July 1, 2008.   On July 2, 2008, in accordance with the terms of the Loan Agreement, Chase established an escrow account on Plaintiff's behalf for the payment of property taxes.

On November 24, 2008, pursuant to the terms of the Loan Agreement, Chase paid Plaintiff's 2008 Frisco ISD and Collin County property taxes in the amount of $5,679.00.  On December 6, 2008, Chase paid Plaintiff's Denton County property taxes in the amount of $762.30.  As of December 6, 2008, the escrow balance on Plaintiff's account was a negative $6,443.86. Despite alleging she intended to timely pay her 2008 taxes, Plaintiff apparently did not notice Chase had paid them until on or about April 29, 2009, almost three months after they were due.  Plaintiff faxed a letter to Chase dated April 29, 2009, stating:

> Here is a copy of my 2008 Property Tax Bill showing the payment wasn't due until 01/31/2009, which Chase Mortgage Company paid in November, 2008 in error. If you have any questions, please contact me at 850-426-9600.

Chase received the fax on April 30, 2009, and responded on May 5, 2009, explaining

3

Plaintiff's property taxes were set up to be paid out of her escrow account and Chase paid the taxes in November in order to allow the Plaintiff to receive any available tax deductions for her income taxes.  Chase's letter further informed Plaintiff she could request that Chase remove the escrow by sending a letter by facsimile to 614-422-7575 or by letter to P.O. Box 24696 to the Escrow Waiver Department.  Plaintiff did not send a request to Chase's Escrow Waiver Department.  Instead, on or about July 17, 2009, Plaintiff asked Chase to spread the period for her to repay her escrow shortage from 12 months to 60 months.  As a courtesy to Plaintiff, Chase agreed to extend the repayment period for 60 months.

Between July 2008 and December 3, 2010, Chase paid $19,443.85 in taxes on the Property and $1,865.50 in property insurance, for a total of $21,309.35.

Plaintiff defaulted on the loan by failing to make her March and April 2009 mortgage payments.  Thereafter, Plaintiff continued to make payments but remained approximately two payments behind on her mortgage payments. Plaintiff applied for a loan modification and on March 19, 2010, Chase notified Plaintiff she was approved to enter a trial period plan ("TPP").  The TPP letter included the following terms:

> (1) Under the TPP, Chase was required to establish an escrow account for the payment of taxes and insurance premium.
> (2) By participating in the TPP, Plaintiff "agree[d] that any prior waiver that allowed [her] to pay directly for taxes and insurance [was] revoked" and Plaintiff agreed to "establish an escrow account and to pay required escrows in that account[.]"
> (3) There might be a shortage of funds in the escrow account at the end of the trial period, which Plaintiff would be required to pay.
> (4) Plaintiff's "existing loan and loan requirements [would] remain in effect and unchanged during the trial period[.]"
> (5) Chase's acceptance and posting of TPP payments would not cure Plaintiff's default unless they were sufficient to completely cure her entire default under the loan.
> (6) Chase could send legal notices required in connection with foreclosure actions and related activities during the trial period.

4

(7) If Plaintiff's loan was modified, the "difference between the amount of the trial period payments and [Plaintiff's] regular mortgage payments [would] be added to the balance of [Plaintiff's] loan along with any other past due amounts," which could impact the monthly payment under a loan modification.

(8) Plaintiff's credit score could be affected by accepting the TPP or a modification, the TPP would not change the terms of the Note, and late payments or other defaults may be reflected in Plaintiff's credit report.

(9) Chase based the TPP payment on what Plaintiff orally represented her gross monthly income to be. However, Chase would verify Plaintiff's income during the TPP, and Plaintiff's verified income would determine her eligibility for a permanent modification and its final terms.

To enter the TPP, Plaintiff was required to submit certain documents by April 18, 2010, and make monthly payments of $1,725.76 during a trial period, with the first TPP payment due May 1, 2010. The TPP payments of $1,725.76 were $445.53 less than the monthly mortgage payments of $2,171.29.  At the time of the TPP offer, Plaintiff was behind by two monthly payments and had a negative escrow balance of $6,617.61. Plaintiff accepted the TPP.

Based on its evaluation of documents provided by Plaintiff, Chase determined that Plaintiff did not qualify for a HAMP loan modification but that she did qualify for a modification under the Chase Home Affordable Modification Program ("CHAMP"). On December 7, 2010, Chase offered Plaintiff a permanent CHAMP loan modification.  Chase offered to: (1) modify the Note from an adjustable 7.125% - 13.625% to a fixed 5.375%; (2) reduce Plaintiff's $1,527.13 interest only payment to a $1,408.30 principal and interest payment; and (3) capitalize Plaintiff's delinquency into an adjusted unpaid principal balance.  The first due date under the proposed loan modification was February 1, 2011.

In a letter dated December 10, 2010, Plaintiff rejected the loan modification, disputing the amount in escrow advances Chase proposed to capitalize into the loan modification and complaining about the proposed total monthly payment amount.  In the letter, Plaintiff admitted that since July

2009, she had paid approximately $10,179.897 into escrow and Chase had advanced $14,865.49 in taxes and insurance.  Plaintiff ignored the $6,443.56 Chase paid prior to July 2009 for the 2007 and 2008 property taxes, however, and  erroneously concluded that only $4,685.60 in escrow advances should be capitalized.  She also overlooked the $645.33 in escrow that would be due before her first modification payment.  Taking these into account, the loan modification offer proposed to capitalize $11,773.43 in escrow advances in order to bring the loan current.

Plaintiff also complained because the $2,074.14 monthly payment under the proposed loan modification was higher than the $1,725.76 TPP payment, arguing her monthly payment under the loan modification could not exceed 31 percent of her gross monthly income, based upon Plaintiff's apparent misconception of HAMP requirements.  The TPP explains the trial period payment was based on Plaintiff's oral representations, whereas the loan modification would be based on her verified income.  The TPP further explains that the modified payment could be higher as a result of capitalizing the delinquency into the loan.

In a letter to Plaintiff dated January 4, 2011, Chase indicated it would consider Plaintiff's loan modification request withdrawn if Plaintiff did not execute and return the proposed loan modification within 15 days.  In a letter dated January 15, 2011, Plaintiff reiterated some of the same complaints she had made about the proposed loan modification offer in her December 10, 2010 letter.  Plaintiff further alleged that Chase had failed to apply a payment of $2,252.00 she made on March 16, 2010.  The payment history shows that the March 16, 2010 payment was applied to the loan.  In a letter to Plaintiff dated May 24, 2011, Chase stated, in part: "This letter is to confirm that you are electing not to proceed with the modification either because you notified us that you do not wish to accept the offer or failed to accept the offer materials within the required time period."

6

Plaintiff did not accept the proposed loan modification.

Plaintiff filed suit asserting the following: (1) that Chase committed fraud by misrepresenting the status of her loan, wrongfully instituting an escrow account, and wrongfully refusing payments; (2) that Chase violated various provisions of the Texas Debt Collection Practices Act ("TDCA"); (3) treble damages under the Deceptive Trade Practices Act ("DTPA") for Chase's alleged violations of the TDCA; and (4) Chase violated the Real Estate Settlement Procedures Act ("RESPA") by inadequately responding and/or failing to respond to alleged qualified written requests ("QWRs").

On May 30, 2012, Chase filed a motion for summary judgment (Dkt. #26).  On June 1, 2012, Plaintiff's counsel filed a motion to withdraw.  The Court granted the motion.  No response was filed to the motion for summary judgment.  On June 21, 2012, the Court gave Plaintiff until July 19, 2012, to file a response to the motion for summary judgment (Dkt. #30).  No response was filed by Plaintiff, and the Plaintiff has filed nothing with the Court since she started representing herself.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which

7

facts are material.  *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the movant

bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must

come forward with evidence that establishes "beyond peradventure *all* of the essential elements of

the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the

nonmovant bears the burden of proof, the movant may discharge its burden by showing that there

is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dallas

Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the

nonmovant must "respond to the motion for summary judgment by setting forth particular facts

indicating there is a genuine issue for trial."  *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at

248-49).  The nonmovant must adduce affirmative evidence.  *Anderson*, 477 U.S. at 257.

### DISCUSSION AND ANALYSIS

Chase moves for summary judgment and raises the following issues: (1) Is a fraud claim

barred by the economic-loss doctrine where the alleged fraudulent statements are statements made

by a loan servicer to a borrower about the status of a loan that is governed by a written loan

agreement?; (2) Is a fraud claim that is based on an alleged oral promise to modify a written loan

agreement that is subject to the statute of frauds barred by the statute of frauds?; (3) May a

third-party servicer who acquired servicing of a loan at a time the loan was current be liable as a

"debt collector" under the TDCA?; (4) Is a loan modification a good or service under the DTPA such

that a borrower who seeks a loan modification qualifies as a "consumer" under the DTPA?; and (5)

May a plaintiff who alleges no actual damages flowing from an alleged failure to respond to a QWR

8

recover under RESPA?

**Fraud Claim**

Plaintiff claims Chase committed fraud, breaking an alleged promise to help her obtain a loan modification.  Defendant asserts that this claim fails as a matter of law under the economic loss doctrine.  The economic loss rule generally precludes recovery in tort where a plaintiff's only injury is an economic loss to the subject of a contract.  *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App. – Tyler 2008, pet. denied) (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)).  "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."  *UMLIC VP LLC v. Environmental Sys. Inc.,* 176 S.W.3d 596, 614 (Tex. Civ. App.–Corpus Christi, 2005, pet. denied) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).  The focus of the rule "is on determining whether the injury is to the subject of the contract itself."  *Academy*, 260 S.W.3d at 541 (citing *Lamar Homes*, 242 S.W.3d at 12).  The rule restricts contracting parties to contractual remedies for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence.  *Id.* (citing *Lamar Homes*, 242 S.W.3d at 12-13).  "If the action depends entirely on pleading and proving the contract in order to establish a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings."  *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex. App. – Tyler 2003, pet. denied).  Thus, in order for a tort duty to arise out of a contractual duty, i.e., negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach a duty imposed by law rather than by the contract.  *DeLanney*, 809 S.W.2d at 494.

"[W]hen a written contract exists, it is more difficult for a party to show reliance on subsequent oral representations." *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Generally, "negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties." *Airborne Freight Corp. Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App.—El Paso 1992, writ denied); *see Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no. pet) (explaining that "there must be an independent injury, other than breach of contract, to support a negligent misrepresentation finding."). In this case, Plaintiff's claim arises from claims dependent upon the existence of a contract. Summary judgment should be granted on this claim.

Chase also asserts that Plaintiff's fraud claim is barred by the statute of frauds. The Court agrees that to the extent Plaintiff's fraud claim is based on allegations that Chase broke an alleged oral promise to modify the Loan Agreement if Plaintiff satisfied certain conditions, Plaintiff's fraud claim is barred by the statute of frauds.

As to the original agreement, the statute of frauds requires that it be in writing. *See* Tex. Bus. & Com. Code § 26.02(a) (stating that any promise, undertaking, commitment, or agreement where the financial institution loans, delays repayment, agrees to loan or delay repayment, or otherwise makes a financial accommodation to which the amount in question exceeds $50,000 must be in writing). As to the alleged oral modification, when a modification relates to a matter that must be in writing, the modification must also be in writing. *Deuley v. Chase Home Fin. LLC*, No. H-05-04253, 2006 WL 1155230, at *2 (S.D. Tex. April 26, 2006); *see Am. Garment Prop., Inc. v. CB Richard Ellis–El Paso, L.L.C.*, 155 S.W.3d 431, 435 (Tex. App.—El Paso 2004, no pet.). Because

10

the modification alleged by Plaintiff was oral and was never reduced to writing, it is unenforceable as a matter of law.

The Court also agrees that Plaintiff's fraud claim also fails because Plaintiff does not plead and cannot prove that Chase had no intention of keeping its alleged promise.  It is undisputed that Chase offered Plaintiff a loan modification and that the loan modification process did halt the foreclosure process.  Thus, Plaintiff cannot prove that Chase had no intention of keeping these alleged promises.  The Court also agrees with Chase that all of Chase's alleged representations were true.

**TDCA Claims**

Chase moves for summary judgment on Plaintiff's TDCA claim asserting that the claim fails because Chase is not a "debt collector" under the meaning of the statute and because Chase did not impose wrongful charges on Plaintiff's account, wrongfully accelerate the debt, or misrepresent that "government assistance was available," as Plaintiff alleges.

The Court agrees that Chase is not a debt collector based upon the facts of this case.  A debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.  Plaintiff does not allege she was in default at the time Chase acquired its interest in the debt. It is undisputed that Plaintiff did not default on the loan payments until almost three years after Chase began servicing the loan. In addition, the summary judgment evidence disproves Plaintiff's allegation that Chase imposed wrongful charges on her account.  The Court also agrees with Chase that there is no evidence Chase accelerated the debt, and even if it had accelerated the debt, it had the right to do so under the terms of the Deed of Trust, because Plaintiff was delinquent on the loan and Chase had properly notified

Plaintiff of its intent to accelerate.  Based upon the summary judgment record, the Court agrees that Plaintiff's TDCA claims have no merit, and summary judgment should be granted in favor of Chase.

**DTPA**

To qualify as a consumer under the DTPA, a plaintiff must (1) seek or acquire goods or services and (2) the goods or services purchased or leased must form the basis of the complaint. *Modelist v. Deutsche Bank Nat. Trust Co.*, No. H-05-1180, 2006 WL 2792196, at *7 (S.D. Tex. Aug. 25, 2006) (citing *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 14 (Tex. 1987)). Whether a plaintiff is a consumer under the DTPA is a question of law. *Id*. (citing *Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex. App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.)).

In evaluating whether Plaintiff is a consumer under the DTPA, the Court must look to the object of the transaction.  Tex. Bus. & Com. Code Ann. § 17.45; *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984).  In *La Sara Grain Company*, the Texas Supreme Court held that a lender may be subject to a DTPA claim if the borrower's "objective" was the purchase or lease of a good or service. *La Sara Grain Co.*, 673 S.W.2d at 567.  However, a person whose objective is merely to borrow money is not a consumer because the lending of money does not involve either the purchase or lease of a good or service. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980).

In the present case, it is undisputed that Plaintiff's claims arise out of a loan and do not involve the purchase or lease of either goods or services.  Plaintiff did not seek to purchase or lease any goods or services from Defendant.  Therefore, Plaintiff is not "consumer" with respect to the home loan.

12

**RESPA**

Plaintiff alleges Chase violated RESPA by failing to respond to various communications she claims constitute QWRs.  Chase moves for summary judgment on this claim based upon the following reasons: (1) Plaintiff suffered no actual damages resulting from Chase's alleged failure to respond to her alleged QWRs; (2) The alleged QWRs were all sent more than a year after Chase notified Plaintiff that Chase was the servicer; (3) Plaintiff's alleged QWRs were not sent to the correct address; (4) Plaintiff's alleged QWRs do not relate to servicing; and (5) Chase responded to the April 29, 2009 letter.  The Court agrees with Chase, and Plaintiff's RESPA claim fails as a matter of law.

It is therefore ORDERED that Defendant's Motion for Summary Judgment (Dkt. #26) is hereby GRANTED and Plaintiff's claims are DISMISSED with prejudice.

**SIGNED this 13th day of September, 2012.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE